Kim D. Stephens, P.S., OSB #030635
Jason T. Dennett (*pro hac vice* forthcoming)
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Telephone: 206-682-5600
Facsimile: 206-682-2992
kstephens@tousley.com
jdennett@tousley.com

[Additional counsel on Signature Page]

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

.

| | |
|---|---|
| E.P., K.R., C.R., and D.C., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH & SERVICES – OREGON; PROVIDENCE WILLAMETTE FALLS MEDICAL CENTER; PROVIDENCE PORTLAND MEDICAL CENTER; and OREGON ANESTHESIOLOGY GROUP,<br><br>        Defendants. | Case No. 3:24-cv-1215<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs E.P., K.R., C.R., and D.C. ("Plaintiffs") hereby file this class action complaint on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, against Defendants Providence St. Joseph Health, Providence Health & Services, Providence Health & Services – Oregon, Providence Willamette Falls Medical Center, and Providence Portland Medical Center (collectively, "Providence"); and Oregon Anesthesiology Group ("OAG," and collectively with Providence, "Defendants"), and DOEs 1-10, and allege as follows based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

## I.    <u>INTRODUCTION</u>

1.    Plaintiffs E.P., K.R., C.R., and D.C. each received anesthesia services at Defendant Providence—their trusted medical provider that purported to offer safe and state-of-the-art treatment—during surgical procedures. As part of their surgeries, Plaintiffs underwent intravenous ("IV") anesthesia performed by a physician employed by Defendant OAG that was admitted to practice by and was under the direction and under the control of Defendant Providence medical centers. Plaintiffs were later informed by Defendant Providence that the physician that administered anesthesia failed to adhere to infection control procedures, and as a result, Plaintiffs were potentially exposed to hepatitis B, hepatitis C, and human immunodeficiency virus ("HIV").

2.    Plaintiffs bring this lawsuit against Defendants Providence and OAG on behalf of themselves and a proposed class of approximately 2,400 similarly situated individuals ("Class Members") who were subject to both actual and potential hepatitis B, hepatitis C, and HIV exposure at Providence medical centers (the "Infectious Disease Exposure Incidents").

3.    In July 2024, Defendant Providence informed Plaintiffs and Class Members that

they had been potentially exposed to hepatitis B, hepatitis C, and HIV at Providence's

Willamette Falls Medical Center, and Portland Medical Center, (collectively, the "Medical

Centers"). Providence notified all patients treated by the former OAG physician that they were

potentially exposed to these infectious, devastating, and in cases, lifelong diseases. Providence

encouraged these patients to have their blood tested for hepatitis C, hepatitis B, and HIV.

4.      As a result of Plaintiffs' and Class Members' receiving IV anesthesia at the

Medical Centers, and as set forth below with greater detail, they were exposed or potentially

exposed to blood-borne pathogens and placed at an increased risk of contracting hepatitis B,

hepatitis C, and HIV. Plaintiffs and Class Members have been and will continue to be tested for

these potentially deadly viruses.

5.      Plaintiffs and Class Members must now undergo medical treatment for their

injuries which would not have been necessary in the absence of Defendants' violations alleged

herein, and have to live with severe emotional and mental anguish due to Defendants'

negligence.

6.      This class action seeks damages, injunctive relief, declaratory judgments, costs,

attorneys' fees, and other relief because of Defendants' conduct described herein.

## II.     **JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class

members, (ii) the aggregate amount in controversy exceeds $5,000,000 exclusive of costs and

interest, and (iii) there is minimal diversity because at least one plaintiff and one defendant are

citizens of different states.

8.      This Court also has subject matter jurisdiction over this action pursuant to 28

U.S.C. § § 1332 because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendants because at least one defendant has its principal place of business in this judicial district, and Defendants otherwise conducted substantial business in this judicial district.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants Providence Willamette Falls Medical Center, Providence Portland Medical Center, and Oregon Anesthesiology Group, P.C. are headquartered and regularly transact business in this district, are subject to general personal jurisdiction in this district, and therefore are deemed to be a citizen of this district. Additionally, Plaintiffs were injured in this district and Defendants received substantial revenue and profits from their provision of medical services in this district. As such, a substantial part of the events and/or omissions giving rise to the claims at issue occurred, in part, within this district.

## III.   INTRADISTRICT ASSIGNMENT

11.     Assignment to the Portland Division is appropriate under Local Civil Rule 3-2(b) because Defendants Providence Willamette Falls Medical Center, Providence Portland Medical Center, and Oregon Anesthesiology Group, P.C. have their principal place of business in the counties of Clackamas and Multnomah and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the counties of Clackamas and Multnomah.

## IV.   PARTIES

### A.   Plaintiffs

12.     Plaintiff E.P. is a resident and citizen of Clackamas County in the State of Oregon.

13.    Plaintiff K.R. is a resident and citizen of Clackamas County in the State of Oregon.

14.    Plaintiff C.R. is a resident and citizen of Clackamas County in the State of Oregon.

15.    Plaintiff D.C. is a resident and citizen of Clackamas County in the State of Oregon.

16.    Given the sensitive nature of their claims, Plaintiffs are using initials in this litigation to protect their privacy, and if required by the Court, will seek permission to proceed under these pseudonyms.

**B.    Defendants**

      **i.    Providence**

17.    Providence St. Joseph Health is a Washington nonprofit corporation with its principal place of business at 1801 Lind Ave, SW, Suite 9016, Renton, Washington 98057, and is registered to do business in the State of Oregon.

18.    Effective July 1, 2016, Providence St. Joseph Health became the sole member of both Providence Health & Services and St. Joseph Health System, creating one of the largest health care systems in the United States, with health care facilities in the States of Alaska, California, Montana, New Mexico, Oregon, Texas, and Washington. Providence St. Joseph Health Services and certain affiliates (including those described below) constitute the "Obligated Group" created under the Master Trust Indenture (Amended and Restated), dated as of May 1, 2003, by and among the Obligated Group and the Bank of New York Mellon Trust Company, N.A.

19.    Providence Health & Services is a Washington nonprofit corporation with its principal place of business at 1801 Lind Ave, SW, Suite 9016, Renton, Washington 98057, and

is registered to do business in the State of Oregon. Providence Health & Services is an

Obligated Group member.

20.    Providence Health & Services – Oregon is a religious nonprofit corporation with

its principal place of business at 1801 Lind Ave, SW, Suite 9016, Renton, Washington 98057.

Providence Health & Services – Oregon is an Obligated Group member that is registered to do

business within the State of Oregon.

21.    Providence Willamette Falls Medical Center is a medical center located at 1500

Division Street in Oregon City, Oregon. Providence Willamette Falls Medical Center is an

Obligated Group member that is registered to do business within the State of Oregon.

22.    Providence Portland Medical Center is a medical center located at 4805 NE

Glisan St., Portland, Oregon 97213. Providence Portland Medical Center is an Obligated Group

member that is registered to do business within the State of Oregon

23.    Providence St. Joseph Health, Providence Health & Services, Providence Health

& Services – Oregon, Providence Willamette Falls Medical Center, and Providence Portland

Medical Center are collectively referred to as "Providence" in this complaint.

### ii.    Oregon Anesthesiology Group

24.    Oregon Anesthesiology Group, P.C. ("OAG") is a professional services

corporation organized under the laws of Oregon with its principal place of business at 707 SW

Washington St., Suite 700, Portland, Oregon 97205. OAG is a physician owned practice that

represents 150+ anesthesiologists and 25+ nurse anesthetists who provide anesthesiology

services to patients in more than 20 facilities, including hospitals, surgery centers, and office-

based practices.

25.     Providence and OAG are collectively referred to as "Defendants" in this complaint.

### iii.     DOE Defendants

26.     DOEs 1-10 are persons or entities of unknown places of residence or states of incorporation that perpetrated the wrongdoing alleged herein. Plaintiffs will attempt to identify DOEs 1-10 through discovery served on Defendants and third parties with whom Defendants interacted.

## V.     STATEMENT OF FACTS

### A.     Defendants Hold Themselves Out to the Public as Providing Safe Medical Care

27.     Providence and OAG each represent to the public that they provide exceptional care.

28.     Providence boasts "122,000 caregivers (all employees)," including 34,000 physicians, at 51 hospitals and 1000 clinics that are "committed to high-quality, compassionate health care for everyone."[1] Providence purports to "advance[e] best practices" to "enhance[] the health of the American West."[2]

29.     Providence Willamette Falls Medical Center is a hospital that "serve[s] the community" and represents that it provides "exceptional care" and offers "some of the most advanced technologies, systems and services."[3] Providence Willamette Falls Medical Center further represents that it is "committed [to] providing compassionate, reliable and safe care"

---

[1] https://www.providence.org/about (last accessed July 26, 2024).

[2] *Id.*

[3] https://www.providence.org/locations/or/willamette-falls-medical-center (last accessed July 26, 2024).

and "continually implement[s] quality initiatives that ensure [its] patients receive the absolute best care."[4]

30.     Providence Portland Medical Center is part of Providence's "network of hospitals, health plans, physicians, clinics and affiliated health services."[5] Providence Portland Medical Center lauds its "recogni[tion] for excellence in patient care" and affirms its commitment to "providing compassionate, reliable and safe care."[6] As part of this commitment, Providence Portland Medical Center tells patients that it "continually implement[s] quality initiatives that ensure [its] patients receive the absolute best care."[7]

31.     OAG claims that its physicians "must meet [a] high standard of clinical excellence to join OAG."[8] Once hired, OAG physicians purportedly "take the time to build trust with [] patient[s] and their families" so that "[t]hey learn [OAG is] constantly looking for ways to keep them safe and comfortable."[9] OAG broadcasts that "the promise of high-quality health care is easily met" by its physicians.[10]

**B.     Defendants' knowledge of the Infectious Disease Exposure Incidents**

32.     According to the Centers for Disease Control ("CDC"), about one in 31 hospital patients in the U.S. has at least one hospital-acquired infection on any given day.[11] Because of

---

[4] https://www.providence.org/locations/willamette-falls-medical-center/about-us (last accessed July 26, 2024).

[5] https://www.providence.org/locations/or/portland-medical-center/about-us (last accessed July 26, 2024).

[6] *Id.*

[7] *Id.*

[8] https://www.oagpc.com/about/ (last accessed July 26, 2024).

[9] *Id.*

[10] *Id.*

[11] https://www.cdc.gov/healthcare-associated-infections/php/data/index.html#:~:text=On%20any%20given%20day%2C%20about%201%20in%2031%20hospital%20patients,had%20one%20or%20more%20HAI (last accessed July 26, 2024).

the high rate of infectious individuals at hospitals, combating healthcare-associated infections

("HAIs")—or an infection that a patient gets while or soon after receiving healthcare—is a top

priority for the CDC and medical care providers.[12]

33.    Defendants were aware of the prevalent risk of HAIs at their medical centers.

Defendant Providence has adopted purportedly "comprehensive infection control practices,"

although it does not make those control practices public. A draft policy available online,

however, describes Defendant Providence's proposed "Infection Prevention Program Plan and

Risk Assessment" for Providence's Torrance medical facility—that's "purpose…is to identify

and to reduce the risks of disease transmission via the development and implementation of

preventative measures."[13]

34.    And Defendant Providence trains its employees on how to care for patients to

avoid what it describes as "preventable" HAIs. For example, Defendant Providence trains new

employees with an "Orientation Information for Workforce Members" presentation at its

locations in Southwest Washington Region and has an entire section on "Hospital Acquired

Infections ('HAIs')."[14]

35.    Defendants recognize the impact HAIs have on patients and the healthcare

system. For example, Defendant Providence notes that "HAIs are important causes of

---

[12] *See* https://www.cdc.gov/healthcare-associated-infections/site.html#hcp (last accessed July 26, 2024).

[13] https://www.providence.org/-/media/Project/psjh/providence/socal/Files/torrance/infection-prevention-policies-review-nov-2020-1.pdf?la=en&hash=A18D66A03E596AE98A1A6FACC82E19BB (last accessed July 26, 2024).

[14] https://www.providence.org/-/media/project/psjh/providence/wa/files/st-peter-hospital/for-health-care-professionals/documentation/orientationinfoworkforcemembers.pdf?rev=2fc1211f093d4a059e10ac2e57ac8291&hash=CBC9F0278F9C54CBA2F1191A398E5D1E (last accessed July 26, 2024).

morbidity and mortality in the United States and are associated with a substantial increase in healthcare costs each year."[15]

36.    Defendants are undeniably aware of both the potential and actual infectious disease exposure incidents endured by patients, including Plaintiffs and Class Members, because Defendant OAG informed Defendant Providence of these incidents, and Defendant Providence informed Plaintiffs of these incidents.

**C.    Defendants' Potential Exposure of Patients to Hepatitis B and C, and/or HIV**

37.    In or around June 2024, Defendant OAG learned that one of its anesthesiologists violated its infection control practices. OAG subsequently suspended this physician and informed the Providence Defendants that Infectious Disease Exposure Incidents occurred. OAG ultimately terminated the physician following an investigation.[16]

38.    Prior to his termination, the physician treated patients at Providence Willamette Falls Medical Center, and Providence Portland Medical Center between 2017 and 2023. In November 2023, OAG ceased providing services to Defendant Providence.[17]

---

[15] https://www.providence.org/-/media/project/psjh/providence/wa/files/st-peter-hospital/for-health-care-professionals/documentation/orientationinfoworkforcemembers.pdf?rev=2fc1211f093d4a059e10 ac2e57ac8291&hash=CBC9F0278F9C54CBA2F1191A398E5D1E (last accessed July 26, 2024).

[16] https://www.opb.org/article/2024/07/11/providence-legacy-health-patients-physician-incompliance/ (last accessed July 24, 2022)

[17] https://www.oregonlive.com/health/2024/07/2400-portland-area-patients-may-have-been-exposed-to-hiv-hepatitis-by-doctor-and-will-receive-notification-letters.html (last accessed July 26, 2024).

39.    In or around July 2024, Defendant Providence informed approximately 2,400 patients, including Plaintiffs and Class Members, of an infection control breach that possibly exposed these individuals to hepatitis B, hepatitis C, and/or HIV.[18]

40.    According to a public statement issued on or around July 11, 2024, Defendant Providence notified approximately 2,200 patients treated at the Providence Willamette Falls Medical Center and the Providence Portland Medical Center that an unnamed physician employed by OAG may have put them at risk of exposure to infection, including for hepatitis B and C, as well as HIV. The statement encouraged patients to get a blood test to screen for these infections and stated that Defendant Providence "will reach out to discuss [] test results and next steps" only "if a patient tests positive." The statement did not provide patients with information to identify the physician or otherwise determine the patient's risk for infection.[19]

41.    Defendant Providence also informed patients of their potential exposure to infection in a letter and/or through a notification on their MyChart, which a Providence spokesperson said were sent out during the week of July 11, 2024.[20]

42.    The information provided to Defendant Providence patients stated, in part:

> We recently learned that Providence's comprehensive infection control practices might not have been followed during some procedures at Providence Willamette Falls Medical Center by a physician employed by Oregon Anesthesiology Group, a third party with whom Providence formerly contracted. Although we do not know whether this action has caused any illness, it is possible that this action may have exposed you to infections, specifically hepatitis B, hepatitis C and human

---

[18] https://www.oregonlive.com/health/2024/07/2400-portland-area-patients-may-have-been-exposed-to-hiv-hepatitis-by-doctor-and-will-receive-notification-letters.html (last accessed July 24, 2024).

[19] https://blog.providence.org/regional-blog-news/patient-notification (last accessed July 24, 2024).

[20] https://www.oregonlive.com/health/2024/07/letters-to-oregon-hospital-patients-possibly-exposed-to-diseases-offer-some-new-details-but-also-sow-concerns.html&subscribed=google-oauth2%7C101665586674875685557 (last accessed July 24, 2024).

immunodeficiency virus (HIV). This physician is no longer providing services at Providence.

43.    Neither Providence's public statement nor the individual letters and notifications provided patients with information to identify the physician or otherwise determine the patient's risk for infection.

44.    Although Defendants' public statements and patient notices were scant on details, Defendants have publicly admitted that the OAG physician caused the Infectious Disease Exposure Incidents. Moreover, the Oregon Health Authority released a statement stating the physician used "unacceptable infection control practices, which put patients at risk of infections[.]"[21] The Oregon Health Authority's statement also "acknowledge[d] the worry, pain and loss suffered by anyone affected by a health care-associated infection (HAI)" and explained that "HAIs can have devastating impacts for patients as they can increase the length of stay, delay recovery from illness, cause emotional stress, and can lead to sepsis or even death."[22]

**D.    Plaintiffs and Class Members Were Potentially Exposed to Debilitating and Deadly Viruses**

45.    Hepatitis B, hepatitis C, and HIV are devastating viruses that are rarely curable and cause significant hardship.

46.    Hepatitis B is a liver infection caused by the hepatitis B virus ("HBV"). HBV is transmitted when blood, semen, or another body fluid from a person infected with the virus enters the body of someone who is uninfected.

---

[21] https://www.independent.co.uk/news/world/americas/portland-hospital-anesthesiologist-hiv-hepatitis-b2579373.html (last accessed July 24, 2024).
[22] https://www.oregonlive.com/health/2024/07/2400-portland-area-patients-may-have-been-exposed-to-hiv-hepatitis-by-doctor-and-will-receive-notification-letters.html (last accessed July 24, 2024).

47.     Hepatitis B is a lifelong infection that, if chronic, can cause liver damage, cirrhosis, liver cancer, and even death. Symptoms include fever, feeling tired, not wanting to eat, upset stomach, throwing up, dark urine, grey-colored stool, joint pain, and yellow skin and eyes.

48.     Hepatitis C is a blood-borne viral infection of the liver that is usually spread when blood from a person infected with the hepatitis C virus enters the body of someone who is not infected. Hepatitis C is most commonly transmitted by exposure to an infected person's blood through shared needles.

49.     If left untreated, hepatitis C can cause serious long-term health problems. Symptoms of hepatitis C may include stomach pain, vomiting or yellow eyes or skin.

50.     HIV is a virus that attacks the body's immune system and is transmitted through the exchange of bodily fluids infected with HIV. HIV progressively weakens the immune system and can lead to severe illnesses like tuberculosis, cryptococcal meningitis, severe bacterial infections, and cancers if left untreated. HIV can also cause illnesses like hepatitis B and C to become worse. At the most advanced stage of infection, individuals can develop AIDs.

51.     Individuals exposed to hepatitis B, hepatitis C, or HIV must subject themselves to expense, inconvenience, distraction from everyday activities, pain, and physical invasion of their persons to undergo blood draws to test for the diseases. While awaiting the results, individuals are acutely concerned with the potential ramifications from the results. Because of the limitations of hepatitis B, hepatitis C and HIV testing, a recent infection may not be detectable for months, so Plaintiffs and Class Members cannot yet know whether they are out of the zone of danger into which Defendants' conduct placed them. From the date of the notice

and extending over the months until the second test is completed, Plaintiffs and Class Members will live with the anxiety, stress, and emotional distress that they may be infected with hepatitis B, hepatitis C and/or HIV.  That distress is the natural, expected product of the zone of danger into which the Defendants' negligence placed Plaintiffs and Class Members.

52.     And even if the test results are negative, the potential for false negatives means that individuals remain at risk for the viruses and will continue to suffer emotionally from the risk of disease.

53.     If an individual's test results are positive, they must undergo expensive and life altering treatment to curb the worst symptoms of the diseases.

       **E.**       **Plaintiffs' Individual Allegations**

           **i.**       **Plaintiff E.P.**

54.     On November 23, 2022, Plaintiff E.P. underwent surgery at Providence Willamette Falls Medical Center. As part of her surgery, Plaintiff E.P. received anesthesiology intravenously. Plaintiff E.P. believed that the physician administering anesthesiology during her surgery was employed by and acting as the agent of Defendant Providence; she was never told prior to the surgery that the anesthesiologist was employed by OAG.

55.     On July 15, 2024, Plaintiff E.P. received a notification electronically and in her MyChart account from Providence Clackamas County and Defendant Providence Willamette Falls Medical Center informing her of a "potential safety issue." According to Providence, "Providence's comprehensive infection control practices might not have been followed during some procedures at Providence Willamette Falls Medical Center by a physician employed by Oregon Anesthesiology Group, a third party with whom Providence formerly contracted." This failure "may have exposed [Plaintiff E.P.] to infections, specifically hepatitis B, hepatitis C and human immunodeficiency virus (HIV)."

56.    On July 23, 2024, Plaintiff E.P. got tested for hepatitis B, hepatitis C, and HIV.

57.    Until she receives her test results, Plaintiff E.P. cannot have any certainty about whether she has been exposed to hepatitis B, hepatitis C, or HIV. And even after she receives her test results, there is no guarantee Plaintiff E.P. is safe from these infections given the possibility of false negative test results.

58.    Plaintiff E.P. has been forced to incur the expense, inconvenience, and distraction from everyday activities due to the worry and stress of her possible infection with hepatitis B, hepatitis C, or HIV. Those damages and similar damages that other Class Members have suffered and will reasonably suffer in the future, in addition to the Class-wide damages of the emotional disruption of their life, the physical invasion and other effects of the testing process, and the days of dread suffered by every class member.

59.    The fact that Plaintiff E.P. has been subject to the Infectious Disease Exposure Incidents has caused her pain, suffering, shock, horror, anguish, grief, anxiety, nervousness, embarrassment, humiliation, loss of enjoyment of life, and other general and special damages in an amount to be proven at trial.

### ii.    Plaintiff K.R.

60.    On January 9, 2023, Plaintiff K.R. underwent inpatient surgery at Providence Willamette Falls Medical Center that involved intravenous anesthesiology. Plaintiff K.R. believed that the physician administering anesthesiology during her surgery was employed by and acting as the agent of Defendant Providence; she was never told prior to the surgery that the anesthesiologist was employed by OAG.

61.    On July 15, 2024, Plaintiff K.R. received a notification in her MyChart account from Providence Clackamas County and Defendant Providence Willamette Falls Medical

Center informing her of a "potential safety issue." According to Defendant Providence, "Providence's comprehensive infection control practices might not have been followed during some procedures at Providence Willamette Falls Medical Center by a physician employed by Oregon Anesthesiology Group, a third party with whom Providence formerly contracted." This failure "may have exposed [Plaintiff K.R.] to infections, specifically hepatitis B, hepatitis C and human immunodeficiency virus (HIV)."

62.     On July 15, 2024, Plaintiff K.R. got tested for hepatitis B, hepatitis C, and HIV.

63.     Until she receives her test results, Plaintiff K.R. cannot have any certainty about whether she has been exposed to hepatitis B, hepatitis C, or HIV. And even after she receives her test results, there is no guarantee Plaintiff K.R. is safe from these infections given the possibility of false negative test results.

64.     Plaintiff K.R. has been forced to incur the expense, inconvenience, and distraction from everyday activities due to the worry and stress of her possible infection with hepatitis B, hepatitis C, or HIV. Those damages and similar damages that other Class Members have suffered and will reasonably suffer in the future, in addition to the Class-wide damages of the emotional disruption of their life, the physical invasion and other effects of the testing process, and the days of dread suffered by every class member.

65.     The fact that Plaintiff K.R. has been subject to the Infectious Disease Exposure Incidents has caused her pain, suffering, shock, horror, anguish, grief, anxiety, nervousness, embarrassment, humiliation, loss of enjoyment of life, and other general and special damages in an amount to be proven at trial.

iii.    **Plaintiff C.R.**

66.    Plaintiff C.R. received anesthesia services at Providence Willamette Falls Medical Center on August 17, 2023, December 8, 2023, and on or about February 6, 2024. Plaintiff C.R. believed that the physician administering anesthesiology during his surgeries was employed by and acting as the agent of Defendant Providence; he was never told prior to the surgeries that the anesthesiologist was employed by OAG.

67.    On July 17, 2024, Plaintiff C.R. received a letter from Defendant Providence Health & Services – Oregon informing him of a "potential safety issue." According to Defendant Providence Health & Services – Oregon, "Providence's comprehensive infection control practices might not have been followed during some procedures at Providence Willamette Falls Medical Center by a physician employed by Oregon Anesthesiology Group, a third party with whom Providence formerly contracted." This failure "may have exposed [Plaintiff C.R.] to infections, specifically hepatitis B, hepatitis C and human immunodeficiency virus (HIV)."

68.    Plaintiff C.R. has been forced to incur the expense, inconvenience, and distraction from everyday activities due to the worry and stress of his possible infection with hepatitis B, hepatitis C, or HIV. Those damages and similar damages that other Class Members have suffered and will reasonably suffer in the future, in addition to the Class-wide damages of the emotional disruption of their life, the physical invasion and other effects of the testing process, and the days of dread suffered by every class member.

69.    The fact that Plaintiff C.R. has been subject to the Infectious Disease Exposure Incidents has caused her pain, suffering, shock, horror, anguish, grief, anxiety, nervousness,

PAGE 17 - CLASS ACTION COMPLAINT

embarrassment, humiliation, loss of enjoyment of life, and other general and special damages in an amount to be proven at trial.

### iv.    Plaintiff D.C.

70.    Plaintiff D.C. received anesthesia services at Providence Willamette Falls Medical Center on or about March 25, 2022. Plaintiff D.C. believed that the physician administering anesthesiology during her surgery was employed by and acting as the agent of Defendant Providence; she was never told prior to the surgeries that the anesthesiologist was employed by OAG.

71.    On July 17, 2024, Plaintiff D.C. received a letter from Defendant Providence Health & Services – Oregon informing her of a "potential safety issue." According to Defendant Providence Health & Services – Oregon, "Providence's comprehensive infection control practices might not have been followed during some procedures at Providence Willamette Falls Medical Center by a physician employed by Oregon Anesthesiology Group, a third party with whom Providence formerly contracted." According to Defendant, this failure "may have exposed [Plaintiff D.C.] to infections, specifically hepatitis B, hepatitis C and human immunodeficiency virus (HIV)."

72.    On July 22, 2024, Plaintiff D.C. got tested for hepatitis B, hepatitis C, and HIV. While the initial test came back negative, Plaintiff has experienced symptoms that make her concerned she contracted hepatitis B, hepatitis C, and/or HIV, and is thus being tested again in the near future.

73.    Until she receives the new test results, Plaintiff D.C. cannot have any certainty about whether she has been exposed to hepatitis B, hepatitis C, or HIV. And even after she

receives her test results, there is no guarantee Plaintiff D.C. is safe from these infections given the possibility of false negative test results.

74.    Plaintiff D.C. has been forced to incur the expense, inconvenience, and distraction from everyday activities due to the worry and stress of her possible infection with hepatitis B, hepatitis C, or HIV. Those damages and similar damages that other Class Members have suffered and will reasonably suffer in the future, in addition to the Class-wide damages of the emotional disruption of their life, the physical invasion and other effects of the testing process, and the days of dread suffered by every class member.

75.    The fact that Plaintiff D.C. has been subject to the Infectious Disease Exposure Incidents has caused her pain, suffering, shock, horror, anguish, grief, anxiety, nervousness, embarrassment, humiliation, loss of enjoyment of life, and other general and special damages in an amount to be proven at trial.

**F.    Defendants' Had a Duty to Properly Admit, Train, Supervise, and Retain Physicians**

76.    Defendant Providence Health & Services – Oregon's Policies and Procedures— which apply to Defendant Providence Willamette Falls Medical Center and Providence Portland Medical Center—exemplify its duty of care to Plaintiffs. These Policies and Procedures apply to all physicians that are granted membership at Defendant Providence Health & Services – Oregon's medical centers.[23] Defendant Providence Health & Services – Oregon's Policies and Procedures dictate specific processes for appointment as a member of the medical staff "based on the applicant's evidence of meeting the established privileging criteria,

---

[23] https://www.providence.org/-/media/project/psjh/providence/or/files/medical-staff/professionalstaffpolicies.pdf?la=en&rev=57d4e95c325b451e9c30b71efe3523a3&hash=4A DBD1F903E6EE8554B30A67E5739E76

education, training, experience, demonstrated current clinical competence, peer

recommendations, health status as it impacts the privileges requested, and other relevant

information."[24]

## VI.    CLASS ACTION ALLEGATIONS

77.    Plaintiffs brings this suit as a class action on behalf of themselves and all other

persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and

(b)(3), and, in the alternative (c)(4), as representative of:

> All persons who were treated at Providence Willamette Falls
> Medical Center in Oregon City, and Providence Portland Medical
> Center in Portland (the Hospitals), between January 1, 2017, and
> July 15, 2024, and were notified by Defendants that they may have
> been exposed to hepatitis B, hepatitis C, and HIV.

78.    Excluded from the Class are Defendants, its affiliates, employees, officers and

directors, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change

or expand the Class definition based on discovery and further investigation.

79.    **Numerosity.** The exact number of Class Members is unknown to Plaintiffs but

can be readily determined from records maintained by Defendants. According to Defendants,

they notified approximately 2,400 individuals that were possibly exposed to hepatitis B,

hepatitis C, and/or HIV, informing them that they should immediately have their blood tested

for these infections. Thus, the number of persons who are members of the proposed Class is so

numerous that joinder of all members is impracticable.

80.    **Commonality.** Common questions of law and fact exist with regard to each of

the claims and predominate over questions affecting only individual Class Members. Questions

common to the Class include:

---

[24] *Id.*

a.      Whether OAG failed to properly evaluate the physician who violated

        infection control practices and may have exposed patients to hepatitis B,

        hepatitis C, and/or HIV before he was hired;

b.      Whether Defendant Providence failed to ensure OAG satisfied the

        appropriate duty of care when it contracted with OAG to provide

        anesthesia services or were otherwise negligent in hiring OAG;

c.      Whether Defendant Providence had a duty of care to Plaintiffs' and Class

        Members in admitting, training, supervising, and retaining the physician

        that administered anesthesia at its medical facilities;

d.      Whether Defendant Providence retained control of the physician employed

        by OAG that administered anesthesia at its medical facilities;

e.      Whether Defendant Providence or Defendant OAG breached any duty of

        care it owed to Plaintiffs' and Class Members;

f.      Whether Plaintiffs' and Class Members' increased risk of exposure to

        hepatitis B, hepatitis C, and/or HIV was caused by Defendants'

        negligence;

g.      Whether Defendants used appropriate and standard-of-care practices to

        monitor the anesthesia services provided by the physician who violated

        infection control practices and may have exposed patients to hepatitis B,

        hepatitis C, and/or HIV;

h.      Whether Defendants timely detected the violation of infection control

        practices and the obvious danger it posed to Plaintiffs and Class Members;

     i.      The adequacy and appropriateness of Defendants' post-exposure testing administered to Plaintiffs and Class Members;

     j.      The nature and extent of the legal claims available to Plaintiffs and Class Members as a result of the zone of danger into which Defendants' conduct has placed them; and

     k.      The recoverable damages of the Plaintiffs and Class Members associated with the necessary testing, re-testing, and inconvenience, disruption, and fear naturally pertaining thereto.

81.    **Typicality.** Plaintiffs' claims are typical of those of the absent Class Members because their claims arise from the same event, practice and/or policies, namely the violation of infection control practices that may have exposed patients to hepatitis B, hepatitis C, and/or HIV. Further, Plaintiffs received the same, or substantially similar, notice as other members of the Class, reflecting Defendants' determination that Plaintiffs are members of a group similarly affected by the same course of conduct alleged herein.

82.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs do not have any interests antagonistic to those of the Class.

83.    **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendants as a result of concurrent litigation each engaged in a fact-intensive analysis of Defendants' negligence. Varying adjudications would also impede Class Members' ability to protect their

own interests, as Class Members could not litigate factual issues relevant to Defendants' that arise in a matter to which the Class Member is not a party. Additionally, adjudication of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests. Moreover, because the amount of each individual Class Member's claim is small relative to the complexity of the litigation, and because of Defendants' financial resources, Class Members are unlikely to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

84.    Class certification is also appropriate under Rule 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

85.    The claims of Class Members include common issues whose efficient adjudication in a class proceeding would materially advance the litigation and aid in achieving judicial economy and efficiency. Hence, in the alternative, class certification under Rule 23(c)(4) may be appropriate as to certain issues.

## VII.    CAUSES OF ACTION

### COUNT I

### Negligence and/or Gross Negligence

### (Against Providence)

86.    Plaintiffs incorporates and realleges the foregoing allegations of facts.

87.    Defendant Providence had a duty to exercise the degree of care expected from a
reasonably prudent medical provider and a duty to safeguard Plaintiffs and Class Members'
well-being. Defendant had a duty to properly admit, train, supervise, and retain physicians with
admission privileges at its medical facilities to ensure that competent and safe medical care was
provided to Plaintiffs and Class Members. This duty arises under common law negligence, as
well as by statutes such as Or. Rev. Stat. Ann. § 441.055.

88.    Defendant Providence breached its duty of care when it failed to properly admit,
train, supervise and retain a physician that exposed or potentially exposed thousands of patients
to hepatitis B, hepatitis C, and HIV.

89.    Defendant Providence is directly liable for its own negligent conduct in the
admission, training, supervision, and retention of the physician that exposed or potentially
exposed thousands of patients to hepatitis B, hepatitis C, and HIV.

90.    Defendant Providence is also vicariously liable for the negligent conduct of the
physician because the physician was acting as Defendant Providence's actual or apparent agent
when they negligently administered anesthesiology to Plaintiffs and Class Members, causing
exposure to and potential contraction of hepatitis B, hepatitis C, and HIV.

91.    Defendant Providence had, or appeared to have, retained control over the
physician employed by Defendant OAG that was admitted to practice, and did practice, at
Defendant Providence's medical facilities. Defendant Providence granted admission privileges,
developed health and safety protocols that all admitted physicians were required to follow, and
had responsibility over training admitted physicians on this health and safety protocols,
enforcing these health and safety protocols, and disciplining physicians that failed to adhere to
its health and safety protocols. Providence also controlled the patients that the physician saw,

when they saw them, and the general scope of their treatment within Providence's medical facilities.

92.     Providence held itself out, expressly or implicitly, as a direct provider of medical care so as to lead a reasonable person to conclude that the negligent actor who delivered the care was Providence's employee or agent in doing so; and Plaintiffs and Class Members relied on those representations by looking to Providence, rather than to the specific physician, as the provider of the care.

93.     Defendant Providence promoted itself based on its superior quality of the health care it offers and cultivated high visibility in its communities to present itself as vital to community health. By that holding out, Defendant Providence cultivated an image that caused Plaintiffs, Class Members, and the public to assume that Defendant Providence exerted some measure of control over the medical activities integral to the hospital setting.

94.     Defendant Providence acted willfully, wantonly, and with conscious and reckless disregard for the rights and interests of Plaintiffs and Class Members. Defendant Providence's acts and omissions had a great probability of causing significant harm and in fact did cause such harm.

95.     Defendant Providence's failure to properly admit, train, supervise, and retain its physicians has caused Plaintiffs to be exposed to devastating blood-borne pathogens leading to severe physical and emotional distress.

96.     Defendant Providence's own negligent conduct was the but-for, proximate, or substantial factor in causing Plaintiffs and Class Members' injuries. Had Defendant Providence properly admitted, trained, supervised, and retained the physician, Plaintiffs and Class

Members would not have been exposed, or potentially exposed to hepatitis B, hepatitis C, and HIV.

97.    As a result of Defendant Providence's violations of the duty of care and failures by Defendant Providence, Plaintiffs and Class Members have been damaged in at least the following ways: incurred the need for necessary medical care, treatment, and services received as of the filing of this action and with reasonable probability to be required in the future; incurred inconvenience and loss of time associated with such medical care, treatment, and services; suffered serious emotional distress, including but not limited to living with the knowledge that they could have or potentially will contract a bloodborne pathogen disease, such as hepatitis B, hepatitis C, and HIV.

98.    Plaintiffs and Class Members also suffered severe emotional distress consisting of shock, fright, horror, anguish, suffering, grief, anxiety, nervousness, embarrassment, humiliation, and shame.

99.    Some of Plaintiffs' and Class Members' injuries are unknown and require and will continue to require expensive medical care and treatment. These, and other general and special damages are continuing in nature and will be determined by the jury at the time of trial.

## COUNT II

## Negligence and/or Gross Negligence

## (Against OAG)

100.    Plaintiff incorporates and realleges the foregoing allegations of fact.

101.    Defendant OAG had a duty to exercise the degree of care expected from a reasonably prudent physician practice and a duty to safeguard Plaintiffs and Class Members'

well-being. Defendant had a duty to train and supervise its employees to ensure that competent and safe anesthesiology care was provided to Plaintiffs and Class Members.

102.    Defendant breached its duty because it knew or should have known that the anesthesiologist was putting the Plaintiffs and Class Members at risk. Defendant failed to exercise the degree of care expected of a reasonably prudent physician practice acting in similar circumstances.

103.    Defendant breached its duty when it failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Oregon, acting in the same or similar circumstances, including by failing to properly hire, train, supervise, and investigate its physician staff.

104.    Defendant OAG's breach of its duty was the but-for and proximate cause, or a substantial factor in causing the injuries sustained by Plaintiffs and the Class. Absent Defendant OAG's failure, Plaintiffs and the Class would not have been exposed, or been potentially exposed to hepatitis B, hepatitis C, and HIV.

105.    As a result of Defendant OAG's violations of its duty of care and failures by Defendant, Plaintiffs and Class Members have been damaged in at least the following ways: incurred the need for necessary medical care, treatment, and services received as of the filing of this action and with reasonable probability to be required in the future; incurred inconvenience and loss of time associated with such medical care, treatment, and services; suffered serious emotional distress, including but not limited to living with the knowledge that they could have or potentially will contract a bloodborne pathogen disease, such as hepatitis B, hepatitis C, and HIV.

106.    Plaintiffs and Class Members also suffered severe emotional distress consisting of shock, fright, horror, anguish, suffering, grief, anxiety, nervousness, embarrassment, humiliation, and shame.

107.    Some of Plaintiffs' and Class Members' injuries are unknown and require and will continue to require expensive medical care and treatment. These, and other general and special damages are continuing in nature and will be determined by the jury at the time of trial.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

1.    Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above and appoint Plaintiffs as representative of the Class and their counsel as Class Counsel;

2.    Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

3.    Award pre-judgment and post-judgment interest on such monetary relief;

4.    Award reasonable attorneys' fees and costs as provided by law; and

5.    Grant such further and other relief that this Court deems appropriate.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated: July 26, 2024                        Respectfully submitted,

                                            **TOUSLEY BRAIN STEPHENS PLLC**
                                            */s Kim D. Stephens*
                                            Kim D. Stephens, P.S. OSB #030635
                                            Jason T. Dennett (pro hac vice forthcoming)
                                            1200 Fifth Avenue, Suite 1700
                                            Seattle, WA 98101
                                            Telephone: 206-682-5600
                                            Facsimile: 206-682-2992
                                            kstephens@tousley.com
                                            jdennett@tousley.com


                                            Adam E. Polk (pro hac vice forthcoming)
                                            Kyle P. Quackenbush (pro hac vice forthcoming)
                                            Reid Gaa (pro hac vice forthcoming)
                                            **GIRARD SHARP LLP**
                                            601 California Street, Suite 1400
                                            San Francisco, CA 94108
                                            Telephone: (415) 981-4800
                                            Email: apolk@girardsharp.com
                                            Email: kquackenbush@girardsharp.com
                                            Email: rgaa@girardsharp.com


                                            Joseph G. Sauder (pro hac vice forthcoming)
                                            Joseph B. Kenney (pro hac vice forthcoming)
                                            Juliette T. Mogenson (pro hac vice forthcoming)
                                            **SAUDER SCHELKOPF LLC**
                                            1109 Lancaster Avenue
                                            Berwyn, PA 19312
                                            Telephone: (610) 200-0580
                                            jgs@sstriallawyers.com
                                            jbk@sstriallawyers.com
                                            jtm@sstriallawyers.com


                                            *Counsel for Plaintiffs and the Proposed Class*