THOMAS R. JOHNSON, Bar No. 010645
tom.johnson@stoel.com
ALEX VAN RYSSELBERGHE, Bar No. 174836
alex.vanrysselberghe@stoel.com
KATHARINE S. SHEPHERD, Bar No. 224891
kate.shepherd@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

*Attorneys for Defendants Legacy Health and Legacy
Mount Hood Medical Center*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| E.P., K.R., C.R., D.C., A.L., and B.G. individually and on behalf of all others similarly situated, | Case No.:  3:24-cv-1215 |
| Plaintiffs, | **DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| PROVIDENCE ST. JOSEPH HEALTH; PROVIDENCE HEALTH & SERVICES; PROVIDENCE HEALTH & SERVICES – OREGON; PROVIDENCE WILLAMETTE FALLS MEDICAL CENTER; PROVIDENCE PORTLAND MEDICAL CENTER; OREGON ANESTHESIOLOGY GROUP; LEGACY HEALTH; and LEGACY MOUNT HOOD MEDICAL CENTER, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL
CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

125900390.4 0015023-00545

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

L.R. 7. 1(A) CERTIFICATION ............................................................................................... 1

MOTION .................................................................................................................................. 1

MEMORANDUM OF LAW ..................................................................................................... 1

    I.      INTRODUCTION ....................................................................................... 1

    II.     LEGAL STANDARD .................................................................................. 4

    III.    ALLEGATIONS ......................................................................................... 4

    IV.    ARGUMENT .............................................................................................. 6

          A.    Plaintiffs' claims must be dismissed in their entirety because Oregon law bars negligence claims based on the mere risk of future harm. ...................... 6

               1.    Oregon law bars negligence claims that are based on the mere risk of future harm. .................................................................................. 7

               2.    Plaintiffs' allegations here mirror the allegations in *Paul*. ................. 11

          B.    Alternatively, Plaintiffs' theory of direct liability against Legacy must be dismissed because Plaintiffs fail to allege that Legacy knew or should have known of any foreseeable risk of harm posed by the OAG employee... 14

    V.     CONCLUSION ......................................................................................... 16

i

DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL
CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

125900390.4 0015023-00545

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................4

*Bollam v. Fireman's Fund Ins. Co.*,
    302 Or. 343 (1986)........................................................................................................8, 9

*Chesterman v. Barmon*,
    82 Or. App. 1 (1986), *aff'd and remanded*, 305 Or. 439 (1988) ...........................................14

*Consolid. Rail Corp. v. Gottshall*,
    512 U.S. 532 (1994).........................................................................................................10

*Dodd v. AA & S Corp.*,
    No. 3:17-CV-00246-AC, 2017 WL 4020426, at *4 (D. Or. Aug. 25, 2017),
    *report and recommendation adopted,* No. 3:17-CV-00246-AC, 2017 WL
    4012957 (D. Or. Sept. 12, 2017)........................................................................................15

*Doe v. American Red Cross*,
    322 Or. 502 (1996)...........................................................................................................8

*Fazzolari By and Through Fazzolari v. Portland School Dist. No. 1J*,
    303 Or. 1, 734 P.2d 1326 (1987) .........................................................................................10

*Gartner v. United States*,
    No. 3:21-cv-01217-JR, 2017 WL 658855 (D. Or. Feb. 15, 2017) (collecting
    Oregon cases).................................................................................................................7

*Harris v. Suniga*,
    344 Or. 301 (2008)......................................................................................................7, 10

*Jones v. City of Hillsboro*,
    No. 3:14-CV-1934-ST, 2015 WL 5737647 (D. Or. Sept. 29, 2015) ......................................14

*Lowe v. Philip Morris USA, Inc.*,
    344 Or. 403 (2008).................................................................................................... passim

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .............................................................................................4

DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL
CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

*Paul v. Providence Health System-Oregon*,
  351 Or. 587 (2012)..................................................................... passim

*Repp v. Hahn*,
  45 Or. App. 671 (1980)................................................................8, 10

*Shoemaker v. Mgmt. Recruiters Int'l, Inc.*,
  125 Or. App. 568 (1993)...................................................................15

*Skoog v. Clackamas County*,
  2004 WL 102497 (D. Or. Jan. 12, 2004), *aff'd in part, rev'd in part and
  remanded sub nom. Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir.
  2006)..............................................................................................15

*Stade v. Oregon Dept. of Human Servs.*,
  No. 6:16-cv-01680-JR, 2022 WL 2995126 (D. Or. May 16, 2022) .........................7

*Ticknor v. Choice Hotels Int'l, Inc.*,
  265 F.3d 931 (9th Cir. 2001) ...........................................................13

*Towner v. Bernardo*,
  304 Or. App. 397 (2020).................................................................14

*U.S. Nat. Bank of Or. v. Davies*,
  274 Or. 663 (1976)........................................................................8

*Whelan v. Albertson's, Inc.*,
  129 Or. App. 501, 879 P.2d 888 (1994).................................................15

*Zehr v. Hagen*,
  318 Or. 647 (1994).....................................................................7, 8, 9

**Rules**

Local Rule 7.1(a) .........................................................................1

Rule 12(b)(1).............................................................................1

Rule 12(b)(6)............................................................................1, 4

Rule 12(f)................................................................................1

DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL
CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF AUTHORITIES

**Other Authorities**

3 Harper, James & Gray, The Law of Torts 650, § 18.1 (2d ed 1986) ..........................................10

*Prosser & Keeton on Torts* 165 (5th ed. 1984) ...........................................................................10

*Restatement (Second) of Torts* § 317 .........................................................................................15

DEFENDANTS LEGACY HEALTH'S AND LEGACY MOUNT HOOD MEDICAL
CENTER'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

## L.R. 7. 1(A) CERTIFICATION

Pursuant to Local Rule 7.1(a), counsel for Defendants Legacy Health and Legacy Health Mount Hood Medical Center (collectively, "Legacy") conferred in good faith with Plaintiffs' counsel about this motion. The parties were unable to resolve the dispute.

## MOTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 12, Legacy, joined by Defendants Oregon Anesthesiologist Group, Providence St. Joseph Health, Providence Health & Services, Providence Health & Services – Oregon, Providence Willamette Falls Medical Center, and Providence Portland Medical Center, moves to dismiss Plaintiffs' First Amended Complaint ("FAC") in its entirety on the ground that Plaintiffs fail to state a claim upon which relief may be granted. Alternatively, Legacy moves to dismiss Plaintiffs' theory of direct liability against Legacy for negligent admission, supervision, training, and retention.[1]

## MEMORANDUM OF LAW

### I.    INTRODUCTION

In Spring 2024, Legacy learned that an anesthesiologist, employed by Defendant Oregon Anesthesiologist Group ("OAG"), had breached infection control protocols at Legacy Mount Hood Medical Center. Legacy immediately suspended the OAG employee and investigated. Although chance of actual infection was low, Legacy nonetheless followed regulatory guidance and notified patients and encouraged testing for bloodborne infection. Legacy informed patients that it would cover the costs of tests.

---

[1] Legacy also joins Defendants Oregon Anesthesiologist Group's, Providence St. Joseph Health's, Providence Health & Services', Providence Health & Services – Oregon's, Providence Willamette Falls Medical Center's, and Providence Portland Medical Center's motions to dismiss under Rule 12(b)(6) and motions to strike class action allegations under Rule 12(f). Legacy takes no position on the other Defendants' motions under Rule 12(b)(1).

Defendants Providence St. Joseph Health, Providence Health & Services, Providence Health & Services – Oregon, Providence Willamette Falls Medical Center, and Providence Portland Medical Center ("Providence") also learned that the same OAG anesthesiologist (who had worked at Providence for years) had potentially exposed Providence patients to bloodborne infection.  Like Legacy, Providence sent letters to affected patents, urging them to test.

This case is a putative class action brought by patients who received anesthesiology services at Legacy and Providence and were sent letters regarding the potential exposure. Plaintiffs bring negligence claims against Providence, OAG, and Legacy, seeking to recover damages that purportedly arise from the apprehension they have regarding potential exposure to disease.

To be clear, no Plaintiffs allege that they, or anyone in the putative class, have actually contracted a bloodborne infection.  In fact, Plaintiffs treated at Legacy admit that they, to date, have tested *negative* for bloodborne infection.  Plaintiffs instead claim that they have some apprehension of potentially testing positive in the future.  Plaintiffs also allege that, in light of this apprehension, they have suffered emotional distress from knowing that they may have been exposed and fear that they might later test positive for a bloodborne infection.

Oregon law does not allow recovery of compensation related to this potential exposure. Oregon law is clear that, to recover in a claim for negligence, plaintiffs must allege an "actual loss"—and mere exposure to future injury, without more, is not an "actual loss."

Indeed, the Oregon Supreme Court has addressed this issue multiple times.  In *Lowe v. Philip Morris USA, Inc.*, 344 Or. 403 (2008), the Oregon Supreme Court rejected a putative negligence class action in which the plaintiff and class members had suffered only an "increased risk of developing lung cancer," but had not actually been diagnosed with lung cancer.  *Id.* at

407–08.  The plaintiff, the *Lowe* court explained, failed to establish an "actual loss" by showing only that she had a significantly increased chance of contracting a serious disease, but no physical injury.  *Id.*  Later, in *Paul v. Providence Health System-Oregon*, 351 Or. 587 (2012), the court rejected another putative negligence class action brought by Providence patients who had been exposed to identity theft in a data breach, where no actual identity theft had actually occurred.  *Id.* at 589–90.  Citing *Lowe*, the *Paul* court rejected the patients' claims even though the patients had alleged they were suffering present out-of-pocket losses from the exposure (and emotional distress from the "attendant worry" of possible identity theft).  *Id.* at 594, 599.  The *Paul* court concluded that the patients' present losses were "premised entirely on the *risk* of future identity theft, and not on any actual identity theft or present financial harm," rendering them unrecoverable as a matter of law.  *Id.* at 599.

Plaintiffs' allegations here are materially identical to the allegations that the Oregon Supreme Court decisively rejected in *Lowe* and *Paul*.  Plaintiffs allege that their injuries arise entirely from a fear or apprehension of being "potentially exposed" to infection sometime in the future, rather than from a current positive test.  As the Oregon Supreme Court has repeatedly held, Plaintiffs' allegation are insufficient to state a negligence claim.  This Court must follow the Oregon Supreme Court and dismiss Plaintiffs' claims with prejudice.

Plaintiffs' claims suffer from other deficiencies.  One of Plaintiffs' chief theories of liability is that Legacy was directly negligent in hiring, training, supervising, and retaining the OAG anesthesiologist responsible for the potential exposure.  But the First Amended Complaint ("FAC") lacks any factual allegation that, if true, establishes that the OAG anesthesiologist's conduct was foreseeable to Legacy, which is necessary to plead a claim for negligence under Oregon law.  Plaintiffs therefore fail to state a direct negligence claim.  To the extent the Court

does not dismiss this action entirely, the Court should alternatively dismiss Plaintiffs' direct negligence claims for this reason.

## II.    LEGAL STANDARD

To avoid dismissal for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

## III.    ALLEGATIONS

Legacy Health is an Oregon nonprofit organization that operates hospitals and healthcare centers throughout the Portland metro area and mid-Willamette Valley, including Legacy Mount Hood Medical Center, located in Gresham, Oregon.  FAC ¶ 26–27.  Legacy contracts with OAG for anesthesiology services.  *Id.* ¶ 46.  Pursuant to that relationship, Legacy contracted with OAG in late 2023 to have an OAG-employed anesthesiologist, who had long provided services at Providence, begin providing services at Legacy Mount Hood Medical Center.  *Id.*

In Spring of 2024, approximately six months into the OAG anesthesiologist's term at Legacy, OAG and Legacy discovered that the anesthesiologist had breached infection control protocols while providing services to patients, risking exposure of some patients to bloodborne infection.  *See id.* ¶ 45.  Legacy immediately suspended the OAG employee and investigated. *See id*.  Legacy soon determined that approximately 221 Legacy patients had received services

from the OAG employee.  *Id.* ¶ 52.  While Legacy determined that the risk of actual exposure was low, it nonetheless notified patients of possible exposure, encouraging them (and offering) to test for the human immunodeficiency virus ("HIV"), hepatitis B, and hepatitis C to confirm the absence of any bloodborne infection.  *See id.* ¶ 90.  Legacy encouraged some patients to test at least three times to determine with a high degree of certainty whether they were infected: once immediately, once approximately four months after the exposure, and once more approximately six months after the exposure.  *Id.*  To minimize inconvenience and hardship for patients, Legacy volunteered to cover the costs of tests for all affected patients.

Providence also learned that the same OAG anesthesiologist—who had worked at Providence for several years prior—had likewise breached Providence's infection control protocols and possibly exposed more than 2,200 Providence patients to bloodborne infection.  *Id.* ¶¶ 46, 48.  Providence, like Legacy, sent letters to affected patients notifying them of the possible exposure and urging them to test for HIV, hepatitis B, and hepatitis C.  *Id.*

Shortly thereafter, Plaintiffs filed this putative class action.  Plaintiffs are patients of Providence and Legacy who received treatment from the OAG anesthesiologist and later received letters informing them of the incident and urging them to test.  *Id.* ¶¶ 63–102.  Plaintiffs allege that Providence, OAG, and Legacy were negligent in admitting, training, supervising, and retaining the OAG anesthesiologist.  *Id.* ¶ 139.  Plaintiffs alternatively seek to hold Defendants vicariously liable for the anesthesiologist's alleged negligence.  *Id.* ¶ 140.

While most Plaintiffs are Providence patients, *see id.* ¶¶ 63–88, two Plaintiffs—A.L. and B.G. ("Legacy Plaintiffs")—were treated at Legacy, *see id.* ¶¶ 89–102.  B.G. received services from the OAG anesthesiologist at Legacy on April 15, 2024.  *Id.* ¶ 96.  A.L. received services in or around May 2024.  *Id.* ¶ 89.  Both were informed about the potential exposure and now allege

they have suffered, and will continue to suffer, economic losses and emotional distress resulting from the incident. *Id.* ¶¶ 90–94, 97–101.

Critically, neither B.G. or A.L. allege they have actually contracted any bloodborne infection. *Id.* ¶¶ 91, 98. In fact, both Plaintiffs allege they have, to date, tested *negative* for HIV, hepatitis B, and hepatitis C. *Id.* Nonetheless, Plaintiffs allege that they have incurred, and will continue to incur, medical expenses and other costs related to necessary medical monitoring for possible infection, in the event of false negative test results. *Id.* ¶¶ 93, 100, 147. Plaintiffs further allege that they are suffering ongoing emotional distress from learning of the potential exposure and "living with the knowledge that they could have or potentially will contract a bloodborne pathogen disease." *Id.* ¶¶ 147–48. Plaintiffs seek classwide monetary compensation for their allege injuries. *Id.* at 36–37.

Legacy, joined by Providence and OAG, moves to dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted. For the reasons below, this Court should dismiss this action with prejudice for failure to allege any actionable injury. Alternatively, the Court should dismiss Plaintiffs' direct negligence claims against Legacy that are based on negligent admission, training, supervision, and retention.

## IV.  ARGUMENT

### A.  Plaintiffs' claims must be dismissed in their entirety because Oregon law bars negligence claims based on the mere risk of future harm.

Plaintiffs' negligence claims must be dismissed for failure to allege an "actual loss." *Lowe*, 344 Or. at 410. Plaintiffs allege no physical harm resulting from the potential exposure, and instead claim only to have suffered economic and emotional injuries based on the concern that they *might* accrue a physical injury *in the future*. FAC ¶¶ 93–94, 99–100, 147–48. But the Oregon Supreme Court has repeatedly rejected the argument that such allegations establish an

125900390.4 0015023-00545

actionable injury for a negligence claim. This Court must follow the Oregon Supreme Court and dismiss Plaintiffs' claims with prejudice.

1. **Oregon law bars negligence claims based on the mere risk of future harm.**

Oregon law has long recognized that a plaintiff cannot recover in negligence for just any allegation of injury. As this Court has recognized, plaintiffs cannot recover emotional distress damages caused by ordinary negligence unless there is concurrent physical harm. *Stade v. Oregon Dept. of Human Servs.*, No. 6:16-cv-01680-JR, 2022 WL 2995126, at *7 n.4 (D. Or. May 16, 2022); *Gartner v. United States*, No. 3:21-cv-01217-JR, 2017 WL 658855, at *7 (D. Or. Feb. 15, 2017) (collecting Oregon cases). Likewise, plaintiffs cannot recover economic losses in negligence actions unless there is concurrent injury to person or property. *Harris v. Suniga*, 344 Or. 301, 307–08 (2008).

These limitations include the well-settled rule that "the threat of *future* harm, by itself, is insufficient as an allegation of damage in the context of a negligence claim." *Zehr v. Hagen*, 318 Or. 647, 656 (1994) (emphasis added); *accord Lowe*, 344 Or. at 410. As the Oregon Supreme Court has explained, this principle is rooted in the fundamentals of common-law negligence:

> Since the action for negligence developed chiefly out of the old form of action on the case, it retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough. Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered.

*Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343, 347 (1986) (quoting Prosser & Keeton, The Law of Torts 165 (5th ed. 1984)); *accord Lowe*, 344 Or. at 410; *Repp v. Hahn*, 45 Or. App. 671, 675 (1980); *U.S. Nat. Bank of Or. v. Davies*, 274 Or. 663, 668 (1976).

Applying this principle, the Oregon Supreme Court has repeatedly rejected claims alleging that a defendant's negligence merely caused plaintiffs an increased risk of future harm, with no present physical injury. For example, in *Lowe v. Philip Morris USA, Inc.*, the Oregon Supreme Court rejected a putative class action brought by a plaintiff who claimed that a cigarette manufacturer had negligently caused her and putative class members to suffer an "increased risk of developing lung cancer." 344 Or. at 408. The plaintiff, a longtime smoker with significant exposure to carcinogenic substances in the defendant's cigarettes, alleged that her fear of contracting cancer sometime in the future made it necessary for her to undergo regular "medical screening" to ensure "[e]arly detection of lung cancer" and "substantially increas[e] the probability of successful treatment, enhanced life expectancy, and cure." *Id.* The plaintiff, however, did not allege that she or anyone else had been actually diagnosed with lung cancer. *Id.* at 407–408, 411.

The Oregon Supreme Court rejected the plaintiff's negligence claim, explaining that "Oregon law has long recognized that the fact that a defendant's negligence poses a threat of future physical harm is not sufficient, standing alone, to constitute an actionable injury." *Id.* at 410 (citing *Zehr*, 318 Or. at 656, and *Bollam*, 302 Or. at 347). The court distinguished *Lowe* from *Doe v. American Red Cross*, 322 Or. 502, 512 (1996), in which the plaintiff had stated a viable negligence claim where he was actually infected with HIV through a contaminated blood transfusion. The *Lowe* court noted that the plaintiff "has not alleged that her exposure to defendants' products has resulted in any present physical effect, much less any present physical

harm," nor that "any future physical harm is certain to follow as a result of that exposure," and thus did not amount to an actual physical injury. *Id.* Rather, the plaintiff had suffered only a "significantly increased risk of developing lung cancer in the future," which, "under *Zehr* and *Bollam*," was "not sufficient to give rise to a negligence claim." *Id.*

The Oregon Supreme Court reaffirmed *Lowe* in *Paul v. Providence Health System-Oregon*, another putative class action in which the plaintiffs sought to recover damages arising from mere exposure to possible future harm. 351 Or. 587. In *Paul*, the plaintiffs and putative class members were patients of Providence who were exposed to identity theft when computer disks containing patients' personal identifying information (full names, addresses, Social Security numbers, and so on) were stolen from a Providence employee's car. *Id.* at 589. Providence notified the affected patients of the data breach and advised them to take certain precautions to protect themselves from identity theft. *Id.* The plaintiffs filed a putative class action asserting claims for negligence and seeking damages arising from the data breach. *Id.* at 590. The *Paul* plaintiffs claimed they had met the "actual injury" requirement because they had already suffered present economic and noneconomic damages from Providence's data breach—including ongoing costs of credit monitoring and emotional distress from patients' worry about possible identity theft. *Id.*

Notwithstanding the plaintiff's allegations of present harm, *Paul* held that *Lowe* barred the plaintiff's negligence claims. Critically, the plaintiffs did not allege that anyone had ever accessed any of the information contained on the disks and tapes, or that any plaintiff had yet suffered any actual identity theft or financial loss from the data breach. *Id.* Thus, the court in *Paul* concluded that plaintiffs' present injuries were barred because they were "based not on any *present harm to their credit or financial well-being*, but solely on their *apprehension of an*

*increased risk of some future harm*"—that is, the future misappropriation of plaintiff's personal identifying information. *Id.* at 599, 602 (emphasis added) (while the plaintiffs had "plausible concerns over the potential for identity theft," "Oregon law does not provide a private right of action for emotional distress damages when those damages are based only on the risk of some future harm"); *see also Repp*, 45 Or. App. at 675 (plaintiff suffered no actionable harm when doctor's initial misdiagnosis of scalp condition, and failure to remove mole, left patient only "at risk" of developing malignant melanoma, but where malignant melanoma had not yet grown).

*Lowe* and *Paul* illustrate what is needed in Oregon to allege an "actual loss" for a negligence claim. Allegations of risk of future injury are not enough. *Lowe*, 344 Or. at 410. Nor is it enough to allege that one has suffered present economic and emotional losses due to the risk of future injury. *Paul*, 351 Or. at 599. Rather, one must suffer a *present*, *physical* injury. *Id.* As the Oregon Supreme Court has repeatedly emphasized, this is a crucial and fundamental principle of Oregon law ensuring that liability in negligence is not limitless: "Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered." *Lowe*, 344 Or. at 410 (quoting *Prosser & Keeton on Torts* 165 (5th ed. 1984)). Indeed, "any system of liability for accidental injuries . . . [must have] limits to the kinds and the items of injury for which there could be recovery." 3 Harper, James & Gray, The Law of Torts 650, § 18.1 (2d ed 1986); *see Fazzolari By and Through Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 6 n.5 (1987) (quoting and relying on this statement from Harper).[2]

---

[2] *Cf. also Harris v. Suniga*, 344 Or. 301, 312 (2008) ("[T]his court has identified the potentially limitless economic impacts of negligent conduct as the reason for barring claims for economic loss."); *Consolid. Rail Corp. v. Gottshall*, 512 U.S. 532, 552 (1994) ("A more significant problem is the prospect that allowing [actions for negligently inflicted emotional distress] can lead to unpredictable and nearly infinite liability for defendants. The common law consistently

## 2.    Plaintiffs' allegations here mirror the allegations in *Paul*.

Under *Lowe* and *Paul*, this Court must dismiss Plaintiffs' negligence claims.  Plaintiffs here do not allege that they have suffered any present physical injuries (indeed, they admit to testing *negative* for bloodborne infection) but rather allege injuries only related to being "potentially exposed" to future injury.  As discussed, the Oregon Supreme Court has explained that mere exposure or risk of future injury—and any economic and emotional losses tied to such exposure or risk—do not, as a matter of law, state an "actual loss" necessary to state a claim for negligence.  *Lowe*, 344 Or. at 411; *Paul*, 351 Or. at 599.

Indeed, Plaintiffs' allegations here are, for all material purposes, *virtually the same* allegations that the Oregon Supreme Court rejected in *Paul*.  Plaintiffs allege that they have suffered, and will continue to suffer, economic and emotional losses due to the *potential* exposure to infection with HIV, hepatitis B, or hepatitis C:

> "Until [they] receive[] results from the additional tests, [B.G. and A.L.] cannot have any certainty about whether [they have] been exposed to hepatitis B, hepatitis C, or HIV.  And even after [they] receive[] [their] test results, there is no guarantee that [Plaintiffs are] safe from these infections given the possibility of false negative test results."  FAC ¶¶ 92, 99.

> "[The Legacy Plaintiffs] ha[ve] been forced to incur the expense, inconvenience, distraction from everyday activities, and distress due to [their] possible infections with hepatitis B, hepatitis C, or HIV."  *Id.* ¶¶ 93, 100.

> "The fact that [the Legacy Plaintiffs] ha[ve] been subject to the [potential exposure] ha[ve] caused [them] pain, suffering, shock,

---

has sought to place limits on this potential liability by restricting the class of plaintiffs who may recover and the types of harm for which plaintiffs may recover.  This concern . . . is based upon the recognized possibility of *genuine* claims from the essentially infinite number of persons, in an infinite variety of situations, who might suffer real emotional harm as a result of a single instance of negligent conduct.").

horror, anguish, grief, anxiety, nervousness, embarrassment, humiliation, [and] loss of enjoyment of life . . . ." *Id.* ¶¶ 94, 101.

"Plaintiffs and Class Members have been damaged in at least the following ways: incurred the need for necessary medical care, treatment, and services received as of the filing of this action and with reasonable probability to be required in the future; have incurred inconvenience and time loss associated with such medical care, treatment, and services; suffered serious emotional distress, including but not limited to living with the knowledge that they could have or potentially will contract a bloodborne pathogen disease, such as hepatitis B, hepatitis C, and HIV." *Id.* ¶ 147.

"Some of Plaintiffs' and Class Members' injuries are unknown and require and will continue to require expensive medical care and treatment." *Id.* ¶ 149.

But these allegations of potential future loss—without loss actually occurring—are *precisely*

what the plaintiffs alleged in *Paul* (albeit in the data privacy context), which the Oregon

Supreme Court rejected.  A side-by-side comparison of Plaintiffs' allegations to the *Paul*

allegations is striking:

| **This Case** | ***Paul*** |
|---|---|
| **Expenses and Costs** ||
| "Plaintiffs and Class Members have . . . **incurred [expense due to] the need for necessary medical care, treatment, and services received** as of the filing of this action and **with reasonable probability to be required in the future** . . . ."  FAC ¶¶ 93, 100, 147. | "Plaintiffs and class members suffered financial injury in the form of past and future **costs to monitor credit reports, recurring future costs** . . . and **possible future costs of repair of identity theft**."  Plaintiffs' Third Amended Complaint and Demand for Jury Trial ("*Paul* Compl."), 2006 WL 6671005, at ¶¶ 21, 24. |
| **"Inconvenience" and "Time Loss"** ||
| "[The Legacy Plaintiffs] ha[ve] been forced to incur . . . **inconvenience** . . . due to [their] possible infections with hepatitis B, hepatitis C, or HIV."  FAC ¶¶ 93, 100. | "[P]laintiffs seek damages for past and future . . . **inconvenience** . . . [as a result of the theft of records]."  *Paul* Compl., 2006 WL 6671005, at ¶ 1. |
| "Plaintiffs and Class Members have been damaged in at least the following ways: . . . incurred inconvenience and **time loss** | "Plaintiffs and class members have suffered economic damages in the form of . . . long distance and **time loss** from employment to |

| associated with such medical care, treatment, and services . . . ." FAC ¶ 147. | address these issues [related to credit monitoring]." *Paul* Compl., 2006 WL 6671005, at ¶ 24. |
|---|---|
| **Emotional Distress** ||
| "Plaintiffs and Class Members have been damaged in at least the following ways: . . . [they have] suffered serious **emotional distress, including** but not limited to **living with the knowledge that they could have or potentially will contract a bloodborne pathogen disease**, such as hepatitis B, hepatitis C, and HIV." FAC ¶ 147. | "[P]laintiffs and class members have suffered . . . worry and **emotional distress associated with** the initial disclosure and **the risk of any future subsequent identity theft** . . . ." *Paul* Compl., 2006 WL 6671005, at ¶ 24. |

As explained in *Paul*, allegations of emotional and economic harm arising from the risk of future loss does not state an actual loss. Plaintiffs here, like the plaintiffs in both *Paul* and *Lowe*, do not allege that Legacy has caused them "any present physical effect, much less any present physical harm," nor "any future physical harm [that] is certain to follow." *Lowe*, 344 Or. at 411. They contend only that they might test positive for a disease in the future. The Oregon Supreme Court has held that this is not enough to state an actionable injury for purposes of a negligence claim.

This Court, sitting in diversity and evaluating Plaintiff's state law claim, is "bound by the pronouncements of the state's highest court." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). To be sure, when interpreting state law, federal courts do not always have the convenience of having a case from a state's highest court that is on all fours with the case before it—but here, this Court has at least two such cases. This Court must follow *Lowe* and *Paul* and dismiss Plaintiffs' claims in their entirety for failure to state an actionable claim. Because the deficiency in Plaintiffs' claims cannot be cured, this Court should dismiss Plaintiffs' claims with prejudice.

**B.    Alternatively, Plaintiffs' theory of direct liability against Legacy must be dismissed because Plaintiffs fail to allege that Legacy knew or should have known of any foreseeable risk of harm posed by the OAG employee.**

Even if Plaintiffs could avoid dismissal for their inability to establish an actual loss, Plaintiffs nonetheless cannot proceed with their direct negligence claims against Legacy. Plaintiffs assert that Legacy was directly negligence in admitting, training, supervising, and retaining the OAG anesthesiologist at Legacy Mount Hood Medical Center.  FAC ¶¶ 137–39. Plaintiffs, however, fail to state any factual allegation that Legacy knew or had reason to know of the OAG anesthesiologist's propensity to breach infection control protocols, as is required to sufficiently plead that the OAG employee's conduct was at all foreseeable to Legacy.  Because this deficiency is fatal, insofar as this Court does not dismiss the FAC in full, the Court should alternatively dismiss Plaintiffs' direct negligence theory against Legacy.

Liability for hiring[3] and retaining employees is triggered when a defendant "negligently plac[es] an employe[e] with known dangerous propensities, or dangerous propensities which could have been discovered by a reasonable investigation, in a position where it is foreseeable that he could injure the plaintiff in the course of the work."  *Chesterman v. Barmon*, 82 Or. App. 1, 4 (1986), *aff'd and remanded*, 305 Or. 439 (1988).  Negligent training claims under Oregon law similarly require that plaintiffs allege facts regarding the defendant's "knowledge of the [employee's] alleged lack of training or dangerous propensities."  *Jones v. City of Hillsboro*, No. 3:14-CV-1934-ST, 2015 WL 5737647, at *11 (D. Or. Sept. 29, 2015).   And claims for negligent

---

[3] Oregon law recognizes that Plaintiffs' "negligent admission" claim is sufficiently analogous to a broader "negligent hiring" claim hiring to render the negligent hiring analysis applicable.  *See Towner v. Bernardo*, 304 Or. App. 397, 419 (2020) (explaining the a "negligent credentialing" claim is "readily understood as a claim for the hospital's negligent hiring").

supervision in Oregon[4] require plaintiffs to "plead that [the employer] knew or should have known of the [employee's] malfeasance." *Whelan v. Albertson, Inc.*, 129 Or. App 501, 507 (1994). In short, negligent hiring, training, supervision, and retention all turn on whether the plaintiff can plausibly establish that a defendant knew or should have known of the employee's dangerous propensities or misconduct, or of any deficiencies in the employee's training. Without such allegations, a plaintiff cannot plausibly establish negligent conduct.

Plaintiffs' FAC includes no allegations giving rise to even an inference that Legacy knew or should have known about the risk of harm posed by the OAG employee. Plaintiffs do not allege, for example, that the OAG anesthesiologist in question had a known history of failing to follow infection control protocols or any other reason suggesting the anesthesiologist might breach such protocols at Legacy. *See Shoemaker v. Mgmt. Recruiters Int'l, Inc.*, 125 Or. App. 568, 575 (1993) (affirming dismissal of claim for negligent hiring when the facts, as alleged, did not "give rise to a reasonable inference" that the employer "knew or had reason to know, at the time [the employee] was hired, that he had engaged in or would engage in sexually abusive conduct with an employee at work"). Nor do Plaintiffs allege facts describing what Legacy's training of the OAG anesthesiologist involved and how it was supposedly deficient. *See Dodd v. AA & S Corp.*, No. 3:17-CV-00246-AC, 2017 WL 4020426, at *4 (D. Or. Aug. 25, 2017), *report and recommendation adopted,* No. 3:17-CV-00246-AC, 2017 WL 4012957 (D. Or. Sept. 12,

---

[4] It is not clear whether Oregon law even recognizes the viability of a claim for negligent supervision. *See Whelan v. Albertson's, Inc.*, 129 Or. App. 501, 507, 879 P.2d 888, 892 (1994) ("*Even if* we accept *Restatement (Second) of Torts* § 317 [on negligent supervision] as law of Oregon . . . ." (emphasis added)); *Skoog v. Clackamas County*, 2004 WL 102497, at * n.13 (D. Or. Jan. 12, 2004), *aff'd in part, rev'd in part and remanded sub nom. Skoog v. County of Clackamas*, 469 F.3d 1221 (9th Cir. 2006) (explaining that "[*Whelan v.*] *Albertson's* did not definitively accept the viability of a negligent-supervision cause of action under Oregon law").

2017) ("Dodd fails to allege how United Vanlines or Hilldrup were negligent in their training, or how this training may have fallen below industry standards. A legal conclusion without supporting facts does not rise to the level of plausibility.").  As such, Plaintiffs' allegations fail to state a claim against Legacy for negligent admission, training, supervision, and retention.  The Court should dismiss that claim.

## V.    CONCLUSION

For all the reasons above, the Court should dismiss this action with prejudice or, in the alternative, dismiss Plaintiffs' direct negligence claim against Legacy for negligent admission, training, supervision, and retention.


DATED:  November 22, 2024                    STOEL RIVES LLP

*/s/ Thomas R. Johnson*
THOMAS R. JOHNSON, Bar No. 010645
tom.johnson@stoel.com
ALEX VAN RYSSELBERGHE, Bar No. 174836
alex.vanrysselberghe@stoel.com
KATHARINE S. SHEPHERD, Bar No. 224891
kate.shepherd@stoel.com

*Attorneys for Defendants Legacy Health and Legacy Mount Hood Medical Center*